Carly M. Roman (SBN: 349895)
croman@straussborrelli.com
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109

Paul J. Doolittle (*Pro Hac Vice forthcoming*)
**POULIN | WILLEY | ANASTOPOULO**
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536
paul.doolittle@poulinwilley.com
cmad@poulinwilley.com

*Attorneys for Plaintiff and Proposed Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

**STEPHEN ALBINDA,** individually and on behalf of all others similarly situated,

Plaintiff,

v.

**ACTIVEHOURS, INC., d/b/a EARNIN,**

Defendant.

Case No.: 5:25-cv-9963

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

1. Breach of Fiduciary Duty
2. Negligence/Wantonness
3. Breach of Implied Contract
4. Invasion of Privacy
5. Unjust Enrichment
6. Violation of South Dakota's Deceptive Trade Practices Act

**CLASS ACTION COMPLAINT**

Plaintiff Stephen Albinda, ("Plaintiff") brings this Class Action Complaint against Defendant Activehours, Inc., doing business as EarnIn ("Defendant") as an individual and on behalf of all others similarly situated, and alleges, upon personal knowledge as to Plaintiff's own

actions and to counsels' investigation, and upon information and belief as to all other matters, as follows:

**PARTIES, JURISDICTION & VENUE**

1. Plaintiff Stephen Albinda is a resident and citizen of Sioux Falls, Minnehaha County, South Dakota. Plaintiff Albinda is a user of the EarnIn platform.

2. Defendant, Activehours, Inc., dba EarnIn, is a foreign stock corporation with a principal place of business located at 391 San Antonia Road, 3rd Floor, Mountain View, California 94040.

3. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C.§1332, because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from each Defendant.

4. This Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself of the laws, rights, and benefits of the State of California; has sufficient minimum contacts in this State; and Plaintiff's claims arise out of or relate to Defendant's business in this State.

5. Venue is proper under 28 U.S.C §1391(b) because Defendant maintains a registered agent in this District, is subject to the Court's personal jurisdiction, and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in and emanated from this District.

**FACTUAL ALLEGATIONS**

6. Defendant is an earnings management company that offers a suite of tools designed to give consumers access to their earnings and support financial wellness. As an earnings management company, Defendant is significantly engaged in financial activities or significantly engaged in activities incidental to such financial activities and requires customers to provide their sensitive personal information in connection with the relevant transaction.

7. Plaintiff and Class Members (later defined) are current and former users of Defendant's various services and products. During their relationship, Plaintiff and Class Members provided Defendant with at least the following: name, address, Social Security number, date of birth, and bank account and routing numbers.

8. "The financial sector is an attractive target for cyber criminals not only for the immediate financial gain but also due to the wealth of sensitive customer information it holds."[1] In 2023, the financial sector accounted for 27% of the breaches handled by Kroll.[2] "In 2024, the Financial Services industry, led by Commercial Banks and Insurance, was the most breached industry, followed by Healthcare (the most attacked industry each year from 2018 until 2024)."[3]

9. Upon information and belief, Defendant was on notice that failing to take steps necessary to secure the PII from the risk of improper disclosure left the data in a dangerous condition.

10. Plaintiff and Class Members, as customers of Defendant, relied on this sophisticated business entity to keep their PII confidential, securely maintained, and to make only authorized disclosures of this information.

11. In, or around, April 2025, Defendant determined that an unauthorized party accessed and acquired personal data from Defendant's banking partner. Investigation determined that the unauthorized party gained access to the personally identifiable information ("PII") of over 21,178 customers, including, but not limited to: Name, address, Social Security number, and date of birth (hereafter, the "Data Breach").

12. On, or about, November 12, 2025, Defendant reported the Data Breach to the Texas Attorney General.

---

[1] *Data Breach Outlook: Finance Surpasses Healthcare as Most Breached Industry in 2023,* available at: https://www.kroll.com/en/publications/cyber/data-breach-outlook-2024.
[2] *Id.*
[3] *Identity Theft Resource Center's 2024 Annual Data breach Report*, available at: https://www.idtheftcenter.org/post/2024-annual-data-breach-report-near-record-compromises/

13. Upon information and belief, the Data Breach was a direct result of Defendant's failure to implement an information security program designed to: (a) to ensure the security and confidentiality of customer information; (b) to protect against anticipated threats or hazards to the security or integrity of that information; and (c) to protect against unauthorized access to that information that could result in substantial harm or inconvenience to any customer.

14. An information security program encompasses the administrative, technical, or physical safeguards used to access, collect, distribute, process, protect, store, use, transmit, dispose of, or otherwise handle customer information. Had Defendant implemented an information security program consistent with industry standards and best practices, it could have prevented the Data Breach.

15. As a result of the Data Breach, Plaintiff has suffered an actual injury, similar to an intangible harm remedied at common law. Defendant's failure to implement an information security program resulted in the unauthorized disclosure of Plaintiff's private information to cybercriminals. The unauthorized disclosure of Plaintiff's PII constitutes an invasion of a legally protected privacy interest, that is traceable to the Defendant's failure to adequately secure the PII in its custody, and has resulted in actual, particularized, and concrete harm to the Plaintiff. The injuries Plaintiff suffered, as described herein, can be redressed by a favorable decision in this matter.

16. Defendant's conduct, as evidenced by the circumstances of the Data Breach, has created a substantial risk of future identity theft, fraud, or other forms of exploitation.

17. Upon information and belief, the data acquired in the Data Breach was leaked, or will be leaked, on the dark web. The dark web uses a series of encrypted networks to hide users' identities, which makes it convenient for criminals to buy and sell illegally obtained data. Many criminals purchase stolen personal data off the dark web before launching social engineering-based attacks. A social engineering attack is a method of using psychological manipulation to deceive a victim and gain access to a computer system or to steal sensitive information such as login credentials. Social engineering attacks that can be launched using names, telephone

numbers and email addresses include phishing, smishing (SMS message), vishing (voice messaging), pretexting, and baiting attacks.

18. As a result of the Data Breach, Plaintiff and Class Members suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) an increase in spam calls, texts, and/or emails; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and increased risk their PII will be further misused, where their data remains unencrypted and available for unauthorized third parties to access on the dark web or otherwise.

19. Specifically, Plaintiff Albinda has suffered injuries as a result of the Data Breach. Plaintiff has spent and will continue spending time and effort investigating the data breach, monitoring his accounts for evidence of misuse, and purchasing credit monitoring/identity theft protection to mitigate the imminent and impending injury arising from the increased risk of fraud or misuse stemming from the Data Breach. Plaintiff also sustained a diminution in the value of his PII, which is a form of intangible property. The exposure of Plaintiff's Social Security number and/or banking information has caused Plaintiff to suffer from anxiety, stress, fear and frustration regarding the real consequences of the Data Breach.

20. Plaintiff brings this class action lawsuit individually, and on behalf of all those similarly situated, to address Defendant' inadequate data protection practices and for failing to provide timely and adequate notice of the Data Breach.

21. Through this Complaint, Plaintiff seeks to remedy these harms individually, and on behalf of all similarly situated individuals whose PII was accessed during the Data Breach. Plaintiff has a continuing interest in ensuring that personal information is kept confidential and protected from disclosure, and Plaintiff should be entitled to injunctive and other equitable relief.

***Data breaches are preventable.***

22. Upon information and belief, the Data Breach was a direct result of Defendant's failure to: (i) identify risks and potential effects of collecting, maintaining, and sharing personal

information; (ii) adhere to its published privacy practices; (iii) implement reasonable data protection measures for the collection, use, disclosure, and storage of personal information; (iv) encrypt sensitive data such as Social Security numbers, and/or (v) ensure its third-party vendors, or business partners were required to implement reasonable data protection measures consistent with Defendant's data protection obligations.

23. The Federal Trade Commission's Standards for Safeguarding Customer Information (the "Safeguards Rule") 16 CFR §314, requires covered financial institutions to develop, implement, and maintain an information security program with administrative, technical, and physical safeguards designed to protect customer information.

24. The following recommendations should be followed:

a. Before you outsource any of your business functions investigate the company's data security practices and compare their standards to yours.[4]

b. Select service providers with the skills and experience to maintain appropriate safeguards. Include security expectations in vendor contracts, monitor the service provider's work, and provide for periodic reassessments of their suitability.

c. Designate a qualified individual to implement and supervise the information security program.

d. Conduct an assessment to determine foreseeable risks and threats service providers present to the security, confidentiality, and integrity of customer information.

e. Design and implement safeguards to control the risks identified through the risk assessment.

f. Regularly monitor and test the effectiveness of the service providers' safeguards.

g. Provide security awareness training and schedule regular refreshers.

h. Negotiate contracts with service providers that include clear obligations regarding data privacy and security.

i. Develop a plan to respond to security incidents involving service providers.

---

[4] *Protecting Personal Information: A Guide for Business*, https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business.

25. Given that Defendant is engaged in activities that are financial in nature, or incidental to such financial activities, Defendant could and should have identified the risks and potential effects of collecting, maintaining, and sharing personal information.

26. Without identifying the potential risks to the personal data in Defendant's possession, Defendant could not identify and implement the necessary measures to detect and prevent cyberattacks.

27. Upon information and belief, the Data Breach occurred because Defendant failed to adequately implement one or more of the following measures to protect the confidentiality and integrity of customer information, resulting the exposure of Plaintiff's and the Class Members' PII:

Reasonable Safeguards

a. Regularly patch critical vulnerabilities in operating systems, software, and firmware on devices. Consider using a centralized patch management system.

b. Check expert websites (such as www.us-cert.gov) and your software vendors' websites regularly for alerts about new vulnerabilities and implement policies for installing vendor-approved patches to correct problems.

c. Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks. Depending on your circumstances, appropriate assessments may range from having a knowledgeable employee run off-the-shelf security software to having an independent professional conduct a full-scale security audit.

d. Scan computers on your network to identify and profile the operating system and open network services. If you find services that you don't need, disable them to prevent hacks or other potential security problems.

e. Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

f. Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email.

g. Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

h. Configure firewalls to block access to known malicious IP addresses.

i. Set anti-virus and anti-malware programs to conduct regular scans automatically.

j. Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

k. Configure access controls—including file, directory, and network share permissions— with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

l. Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

m. Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

n. Consider disabling Remote Desktop protocol (RDP) if it is not being used.

o. Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

p. Execute operating system environments or specific programs in a virtualized environment.

q. Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.

r. Conduct an annual penetration test and vulnerability assessment.

s. Secure your backups.[5]

t. Identify the computers or servers where sensitive personal information is stored.

u. Identify all connections to the computers where you store sensitive information. These may include the internet, electronic cash registers, computers at your branch offices, computers used by service providers to support your network, digital copiers, and wireless devices like smartphones, tablets, or inventory scanners.

v. Don't store sensitive consumer data on any computer with an internet connection unless it's essential for conducting your business.

w. Encrypt sensitive information that you send to third parties over public networks (like the internet) and encrypt sensitive information that is stored on your computer network, laptops, or portable storage devices used by your

---

[5] *How to Protect Your Networks from Ransomware*, at p.3, https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view

employees. Consider also encrypting email transmissions within your business.

x. Regularly run up-to-date anti-malware programs on individual computers and on servers on your network.

y. Restrict employees' ability to download unauthorized software. Software downloaded to devices that connect to your network (computers, smartphones, and tablets) could be used to distribute malware.

z. To detect network breaches when they occur, consider using an intrusion detection system.

aa. Create a "culture of security" by implementing a regular schedule of employee training. Update employees as you find out about new risks and vulnerabilities.

bb. Tell employees about your company policies regarding keeping information secure and confidential. Post reminders in areas where sensitive information is used or stored, as well as where employees congregate.

cc. Teach employees about the dangers of spear phishing—emails containing information that makes the emails look legitimate. These emails may appear to come from someone within your company, generally someone in a position of authority. Make it office policy to independently verify any emails requesting sensitive information.

dd. Before you outsource any of your business functions investigate the company's data security practices and compare their standards to yours.

28. Defendant knew and understood PII is valuable and highly sought after by cybercriminals seeking to illegally monetize that data. At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding PII and of the foreseeable consequences that would occur if a data breach occurred, including the significant cost that would be imposed on Plaintiff and the Class Members as a result.

29. Upon information and belief, a criminal can easily link data acquired in the Data Breach with information available from other sources to commit a variety of fraud related crimes. An example of criminals piecing together bits and pieces of data is the development of "Fullz" packages.[6] With "Fullz" packages, cyber-criminals can combine multiple sources of PII to apply for credit cards, loans, assume identities, or take over accounts.

---

[6] "Fullz" is term used by cybercriminals to describe "a package of all the personal and financial records that thieves would need to fraudulently open up new lines of credit in a person's name."

30. Given the type of targeted attack in this case, the sophistication of the criminal responsible for the Data Breach, the type of PII involved in the Data Breach, the ability of criminals to link data acquired in the Data Breach with information available from other sources, and the fact that the stolen information has been placed, or will be placed, on the dark web, it is reasonable for Plaintiff and the Class Members to assume that their PII was obtained by, or released to, criminals intending to utilize the PII for future identity theft-related crimes or exploitation attempts.

31. The substantial risk of future identity theft, fraud, or other exploitation that Plaintiff and Class Members face is sufficiently concrete, particularized, and imminent that it necessitates the present expenditure of funds to mitigate the risk. Consequently, Plaintiff and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions to understand and mitigate the effects of the Data Breach.

32. For example, the Federal Trade Commission has recommended steps that data breach victims take to protect themselves and their children after a data breach, including: (i) contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for seven years if someone steals their identity); (ii) regularly obtaining and reviewing their credit reports; (iii) removing fraudulent charges from their accounts; (iv) closing new accounts opened in their name; (v) placing a credit freeze on their credit; (vi) replacing government-issued identification; (vii) reporting misused Social Security numbers; (viii) contacting utilities to ensure no one obtained cable, electric, water, or other similar services in their name; and (ix) correcting their credit reports.[7]

---

A Fullz package typically includes the victim's name, address, credit card information, social security number, date of birth, bank name, routing number, bank account numbers and more. *See, e.g.*, Brian Krebs, *Medical Records for Sale in Underground Stolen From Texas Life Insurance Firm*, Krebs on Security (Sep. 18, 2014), https://krebsonsecurity.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm

[7] *See* Federal Trade Commission, *Identity Theft.gov*, https://www.identitytheft.gov/Steps

33. Furthermore, Defendant's poor data security practices deprived Plaintiff and Class Members of the benefit of their bargain. By transacting business with Plaintiff and Class Members, collecting their PII, using their PII for profit or to improve the ability to make profits, and then permitting the unauthorized disclosure of the PII, Plaintiff and Class Members were deprived of the benefit of their bargain.

34. When agreeing to pay Defendant for products or services, consumers understood and expected that they were, in part, paying for the protection of their personal data, when in fact, Defendant did not invest the funds into implementing reasonable data security practices. Accordingly, Plaintiff and Class Members received services that were of a lesser value than what they reasonably expected to receive under the bargains they struck with Defendant.

35. Through this Complaint, Plaintiff seeks redress individually, and on behalf of all similarly situated individuals, for the damages that resulted from the Data Breach.

## CLASS ALLEGATIONS

36. Plaintiff brings this nationwide class action individually, and on behalf of all similarly situated individuals, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

37. The Class that Plaintiff seeks to represent is defined as follows:

> **Nationwide Class:** All individuals residing in the United States whose PII was accessed or acquired by an unauthorized party as a result of a data breach that was reported by Defendant in, or around, November 2025 (the "Class" or "Class Members").
>
> South Dakota Subclass: All individuals residing in the South Dakota whose PII was accessed or acquired by an unauthorized party as a result of the data breach that was reported by Defendant in, or around, November 2025 (the "South Dakota Subclass")

38. Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

39. Plaintiff reserves the right to amend the definitions of the Class or add a Class or Subclass if further information and discovery indicate that the definitions of the Classes should be narrowed, expanded, or otherwise modified.

40. Numerosity: The members of the Class are so numerous that joinder of all members is impracticable, if not completely impossible. However, the exact number of Class Members is unknown to Plaintiff at this time and such number is exclusively in the possession of Defendant.

41. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. The questions of law and fact common to the Class that predominate over questions which may affect individual Class Members, includes the following:

a. Whether and to what extent Defendant had a duty to protect the PII of Plaintiff and Class Members;

b. Whether Defendant had a duty not to disclose the PII of Plaintiff and Class Members to unauthorized third parties;

c. Whether Defendant failed to adequately safeguard the PII of Plaintiff and Class Members;

d. Whether Defendant required third-party vendors to adequately safeguard the PII of Plaintiff and Class Members;

e. When Defendant actually learned of the Data Breach;

f. Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their PII had been compromised;

g. Whether Defendant violated the law by failing to promptly notify Plaintiff and Class Members that their PII had been compromised;

h. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

i. Whether Defendant adequately addressed and fixed the practices, procedures, or vulnerabilities which permitted the Data Breach to occur;

j. Whether Plaintiff and Class Members are entitled to actual damages, statutory damages, and/or nominal damages as a result of each Defendant' wrongful conduct;

k. Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and ongoing harm faced as a result of the Data Breach.

42. Typicality: Plaintiff's claims are typical of those of the other members of the Class because Plaintiff, like every other Class Member, was exposed to virtually identical conduct and now suffers from the same violations of the law as each other member of the Class.

43. Policies Generally Applicable to the Class: This class action is also appropriate for certification because Defendant acted or refused to act on grounds generally applicable to the Classes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Classes as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenges of these policies hinges on each Defendant's conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff.

44. Adequacy: Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that Plaintiff has no disabling conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiff seeks no relief that is antagonistic or adverse to the Class Members and the infringement of the rights and the damages suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex class action and data breach litigation, and Plaintiff intends to prosecute this action vigorously.

45. Superiority and Manageability: The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

46. The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since Defendant would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

47. The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

48. Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

49. Unless a Class-wide injunction is issued, Defendant may continue in the failure to properly secure the PII of Class, Defendant may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Complaint.

50. Further, Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

51. Likewise, particular issues are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a. Whether Defendant owed a legal duty to Plaintiff and the Class to exercise due care in collecting, sharing, storing, and safeguarding their PII;

b. Whether Defendant's failure to institute adequate data protection measures amounted to negligence/wantonness;

c. Whether Defendant failed to take commercially reasonable steps to safeguard consumer PII;

d. Whether Defendant made false representations about their data privacy practices and commitment to the security and confidentiality of personal information; and

e. Whether adherence to data privacy recommendations and best practices would have prevented the Data Breach.

## CAUSES OF ACTION

### COUNT 1: BREACH OF FIDUCIARY DUTY
### (On Behalf of the National Class)

52. Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

53. Defendant had a fiduciary duty to Plaintiff and Class Members as a result of the financial relationship. Plaintiff and Class Members reposed trust and confidence in Defendant to adequately safeguard the confidentiality of the PII collected or created during that financial relationship.

54. Defendant breached the fiduciary duties owed to Plaintiff and Class Members by failing to ensure the confidentiality, integrity, and availability of PII Defendant created, received, maintained, and transmitted.

55. Defendant breached fiduciary duties owed to Plaintiff and Class Members by failing to protect against reasonably anticipated threats or hazards to the confidentiality, integrity, and availability of the PII in its possession.

56. Defendant breached fiduciary duties owed to Plaintiff and Class Members by impermissibly and improperly using and disclosing PII that is and remains accessible to unauthorized persons.

57. Defendant breached fiduciary duties owed to Plaintiff and Class Members by failing to effectively train all members of its workforce on the policies and procedures with respect to PII as necessary and appropriate to carry out their functions.

58. Defendant breached fiduciary duties owed to Plaintiff and Class Members by failing to design, implement, and enforce policies and procedures establishing technical and/or administrative safeguards to safeguard PII.

59. As a direct and proximate result of Defendant's breach of fiduciary duties, Plaintiff and Class Members have suffered and will suffer injury, as described herein. Accordingly, Plaintiff and Class Members are entitled to compensatory, consequential, and/or nominal damages in an amount to be determined.

**COUNT 2: NEGLIGENCE/WANTONNESS**
**(On Behalf of the National Class)**

60. Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

61. Defendant requires users, including Plaintiff and Class Members, to submit PII in the ordinary course of providing financial products or services.

62. Defendant gathered and stored the PII of Plaintiff and Class Members as part of its business of soliciting its services to customers. Plaintiff and Class Members entrusted Defendant with their PII with the understanding that Defendant would adequately safeguard their information.

63. Defendant had full knowledge of the types of PII collected and the types of harm that Plaintiff and Class Members would suffer if that data was accessed and exfiltrated by an unauthorized third-party.

64. Defendant regularly transfers money to and from customers' bank accounts. Since Defendant engaged in activities that are financial in nature, it had a duty to develop, implement, and maintain reasonable administrative, technical, and physical safeguards to protect the confidentiality and integrity of customer information.

65. Defendant had a duty to develop, implement, and maintain a written information security program designed to protect customer information. The information security program should have been appropriate to the size and complexity of the Defendant's business, the nature and scope of its business activities, and the sensitivity of the information at issue.

66. Defendant's information security program was not designed to: (a) ensure the security and confidentiality of customer information; (b) protect against anticipated threats or hazards to the security, confidentiality, or integrity of that information; and (c) protect against unauthorized access to that information that could result in substantial harm or inconvenience to any customer.

67. Defendant breached the duty to: (i) implement reasonable administrative, technical, and physical measures to detect and prevent unauthorized intrusions into its information technology environments; (ii) contractually obligate its business partners to adhere to applicable statutes and data protection obligations; (iii) conduct regular privacy assessments and security audits of its partner's data processing activities; (iv) regularly audit for compliance with contractual and other applicable data protection obligations; and, (v) provide timely notice to individuals impacted by a data breach event.

68. Defendant had a duty to notify Plaintiff and the Class of the Data Breach promptly and adequately. Such notice was necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any fraudulent usage of their PII.

69. Defendant breached its duties by failing to adhere to privacy policies regarding the confidentiality and security of Plaintiff and Class Members information. Defendant further breached its duties by failing to implement an information security plan or use reasonable security measures to protect PII.

70. Furthermore, Defendant breached its duty to oversee service providers and business partners, including, but not limited to: (i) failing to take reasonable steps to select and retain service providers that are capable of maintaining appropriate safeguards for the customer information at issue; (2) failing to contractually require service providers to implement and

maintain appropriate safeguards for customer PII; and (3) failing to periodically assess their service providers based on the unique risks they present and the continued adequacy of their safeguards. Defendant's actions constitute negligence/wantonness.

71. The injuries resulting to Plaintiff and the Class because of Defendant's failure to use adequate security measures was reasonably foreseeable.

72. Plaintiff and the Class were the foreseeable victims of a data breach.

73. Plaintiff and the Class had no ability to protect the PII in Defendant's possession. Defendant was in the best position to protect against the harms suffered by Plaintiff and the Class as a result of the Data Breach.

74. But for Defendant's breach of duties owed to Plaintiff and the Class, their PII would not have been compromised. There is a close causal connection between Defendant's failure to implement reasonable security measures to protect the PII of Plaintiff and the Class and the harm, or risk of imminent harm, suffered by Plaintiff and the Class.

75. As a result of the Data Breach, Plaintiff and Class Members suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of their PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) statutory damages; (vii) nominal damages; and (viii) the continued and increased risk their PII will be misused, where their data remains unencrypted and available for unauthorized third parties to access.

## COUNT 3: BREACH OF IMPLIED CONTRACT
## (On Behalf of the National Class)

76. Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

77. Defendant creates or collects PII in the ordinary course of providing financial products or services. Plaintiff and Class Members understood that a portion of their payments would be used by Defendant to provide reasonable data security.

78. Upon information and belief, Defendant established a privacy policy to govern the collection, use, sharing, and protection of customer information.

79. In so doing, Plaintiff and Class Members entered implied contracts with Defendant by which Defendant agreed to use reasonable technical, administrative, and physical safeguards to protect against unauthorized access to, use of, or disclosure of the personal information. Defendant' obligation includes ensuring its business partners are contractually required to use reasonable technical, administrative, and physical safeguards to protect PII.

80. Plaintiff and Class Members would not have entrusted their PII to Defendant in the absence of an expressed or implied promise to implement reasonable data protection measures and to ensure its vendors do the same.

81. Plaintiff and Class Members fully and adequately performed their obligations under the implied contract with Defendant.

82. Defendant breached the implied contract with Plaintiff and Class Members which arose from the course of conduct between the parties, which created a reasonable expectation that the personal information Defendant collected would be adequately protected and that the Defendant would take such actions as were necessary to prevent unauthorized access to, use of, or disclosure of such information.

83. Defendant breached the terms of the implied contract it entered into with Plaintiff and Class Members by failing to: (a) maintain the confidentiality of their PII; (b) adequately protect the confidentiality of the PII by using reasonable physical, administrative, or technical safeguards; (c) comply with legal obligations regarding the safeguarding of their PII; and (d) provide reasonable and timely notice of the Data Breach.

84. As a direct and proximate result of the Defendant' breach of an implied contract, Plaintiff and Class Members suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of their PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including cancelled or rescheduled medical procedures and appointments; (v) loss of benefit of

the bargain; (vi) statutory damages; (vii) nominal damages; and (viii) the continued and increased risk their data will be misused, where their data remains unencrypted and available for unauthorized third parties to access.

**COUNT 4: INVASION OF PRIVACY**
**(On Behalf of the National Class)**

85. Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

86. Plaintiff and Class Members had a legitimate expectation of privacy in their sensitive personally identifying information such as Social Security numbers and financial information. Plaintiff and Class Members were entitled to the protection of this information from disclosure to unauthorized third parties.

87. Defendant owed a duty to Plaintiff and Class Members to keep their PII confidential.

88. Defendant permitted the public disclosure of Plaintiff's and Class Members' PII to unauthorized third parties.

89. The PII that was disclosed without the Plaintiff's and Class Members' authorization was highly sensitive, private, and confidential. The public disclosure of the type of PII at issue here would be highly offensive to a reasonable person of ordinary sensibilities.

90. Defendant failed to exercise the level of vendor oversight required by law, which created an atmosphere for the Data Breach to occur. Due to Defendant' poor vendor oversight, its vendors were vulnerable to foreseeable threats, such as employee bribery, which created an atmosphere for the Data Breach to occur. Despite knowledge of the substantial risk of harm created by these conditions, Defendant intentionally disregarded the risk, thus permitting the Data Breach to occur.

91. By permitting the unauthorized disclosure, Defendant acted with reckless disregard for the Plaintiff's and Class Members' privacy, and with knowledge that such

disclosure would be highly offensive to a reasonable person. Furthermore, the disclosure of the PII at issue was not newsworthy or of any service to the public interest.

92. Each Defendant was aware of the potential of a data breach and failed to implement appropriate policies and procedures to prevent the unauthorized disclosure of Plaintiff's and Class Members' data.

93. Defendant acted with such reckless disregard as to the safety of Plaintiff's and Class Members' PHI/PII to rise to the level of intentionally allowing the intrusion upon the seclusion, private affairs, or concerns of Plaintiff and Class Members.

94. Plaintiff and Class Members have been damaged by the invasion of their privacy in an amount to be determined at trial.

**COUNT 5: UNJUST ENRICHMENT**
**(On Behalf of the National Class)**

95. Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

96. Plaintiff brings this Count in the alternative to the breach of implied contract count above.

97. Plaintiff and Class Members conferred a monetary benefit on Defendant by using its financial services application. During this financial relationship, Defendant collected PII regarding Plaintiff and Class Members to facilitate the transfer of money. Defendant knew that Plaintiff and Class Members conferred a benefit upon them and have accepted and retained that benefit.

98. By collecting customer PII in connection with a financial service, Defendant was obligated to safeguard and protect such information, to keep such information confidential, and to timely and accurately notify Plaintiff and Class Members if their data had been compromised or stolen. Defendant also had a legal obligation to safeguard the data it collected and to provide notice of a data breach under various state and federal laws.

99. Defendant failed to secure Plaintiff's and Class Members' PII and, therefore, it would be unjust for Defendant to retain any of the benefits that Plaintiff and Class Members conferred upon Defendant without paying value in return.

100. As a direct and proximate result of the Defendant's conduct, Plaintiff and Class Members suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of their PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, (v) loss of benefit of the bargain; (vi) statutory damages; (vii) nominal damages; and (vii) the continued and increased risk their PII will be misused, where. their data remains unencrypted and available for unauthorized third parties to access.

101. Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct.

**COUNT 6: VIOLATION OF SOUTH DAKOTA'S DECEPTIVE TRADE PRACTICES & CONSUMER PROTECTION LAWS**
**(On Behalf of the South Dakota Subclass)**

102. Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

103. Plaintiff and Class Members are consumers of Defendant's products and services. Defendant requires its customers, including Plaintiff and Class Members, to submit PII in the ordinary course of providing products or services.

104. Defendant gathered and stored the PII of Plaintiff and Class Members as part of its business of soliciting its services to customers. Plaintiff and Class Members entrusted Defendant with their PII with the understanding that Defendant would adequately safeguard their information.

105. Defendant knowingly acted, used, or employed a deceptive practice or misrepresented the method and manner in which it would secure the Plaintiff and Class

Members' PII in connection with the sale or advertisement of Defendant's financial products in violation of South Dakota Codified Laws §37-24-6.

106. Defendant violated the state consumer protection statute by failing to adhere to its own privacy policy regarding the confidentiality and security of Plaintiff's and Class Members' information. Defendant further violated the state consumer protection statute by failing to use reasonable measures to protect PII.

107. Defendant's conduct created a likelihood of confusion or misunderstanding regarding its actual data privacy and security practices. Defendant promised to protect Plaintiff's and Class Members' PII via its privacy policies, but allowed the unauthorized access to this data; Defendant failed to disclose material facts that the Plaintiff's and Class Members' PII would be disclosed to unauthorized third parties; Defendant failed to obtain Plaintiff's and Class Members' consent in transmitting their PII to a third party; and knowingly violated industry and legal standards regarding the protection of Plaintiff's and Class Members' PII.

108. Defendant's unfair or deceptive acts affected public interests, including those of Plaintiff and Class Members. Defendant knew or should have known that it was likely to mislead its customers who were acting reasonably. Defendant engaged in unfair or deceptive practices by breaching its duties to provide technical and organizational data security policies, procedures, and practices. Defendant's failure to adhere to its published privacy policies and procedures is offensive to established public policy and is substantially injurious to consumers as evidenced by the massive Data Breach.

109. Had Plaintiff and Class Members known Defendant would not follow its own published security practices they would not have purchased (or continued to purchase) Defendant's products or services. Defendant's deceptive acts, as described herein, proximately caused Plaintiff and Class Members damages.

110. As a direct and proximate result of the Defendant's conduct, Plaintiff and Class Members suffered damages including, but not limited to: (i) invasion of privacy; (ii) theft of their PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with

attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) mitigation costs and expenses; and (vii) attorneys' fees and court costs.

111. Plaintiff alleges that Defendant's data security measures remain inadequate. Plaintiff will continue to suffer injury as a result of the compromise of their PII and remain at imminent risk that further compromises of their PII will occur in the future.

112. Plaintiff and Class Members have suffered irreparable injury, and will continue to suffer injury in the future, as a result of Defendant's deceptive trade practices, which places Plaintiff and Class Members at imminent risk that further compromises of their PII will occur in the future. As such, the remedies available at law are inadequate to compensate for that injury. Accordingly, Plaintiff and Class Members also seek to obtain a judgment declaring, among other things, the following:

a. Defendant continues to owe a legal duty to secure PII and to timely notify consumers of a data breach under the common law, Section 5 of the FTC Act, and various state statutes.

b. Defendant continues to breach this legal duty by failing to employ reasonable measures to secure Plaintiff and Class Members' PII.

113. The Court also should issue corresponding prospective injunctive relief requiring that Defendant employs adequate data protection practices consistent with law and industry standards.

114. The hardship to Plaintiff if an injunction is not issued exceeds the hardship to Defendant if an injunction is issued. Among other things, if another massive data breach occurs, Plaintiff will likely be subjected to fraud, identity theft, and other harms described herein. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

115. The issuance of the requested injunction will not do a disservice to the public interest. To the contrary, such an injunction would benefit the public by encouraging Defendant to take necessary action to prevent another data breach, thus eliminating the additional injuries

that would result to Plaintiff and the multitude of individuals whose PII would be at risk of future unauthorized disclosures.

116. As a result of the Defendant's false, misleading, or deceptive acts, regarding its data security practices, the consuming public in general, Plaintiff, and Class Members suffered injuries including, but not limited to, the future and continued risk their PII will be misused, where: (a) their data remains unencrypted and available for unauthorized third parties to access; and (b) remains under Defendant's possession or control and is subject to further unauthorized disclosures so long as Defendant fails to implement appropriate and reasonable measures to protect the PII.

117. Plaintiff and Class Members are entitled to attorneys' fees, costs, and injunctive relief requiring Defendant to: (i) strengthen its data protection procedures; and (ii) to provide adequate dark web monitoring and/or credit monitoring to all affected by the Data Breach.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the other members of the Class alleged herein, respectfully requests that the Court enter judgment as follows:

A. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff(s) as the representatives for the Class and counsel for Plaintiff(s) as Class Counsel;

B. For an order declaring the Defendant's conduct violates the statues and causes of action referenced herein;

C. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

D. Ordering Defendant to pay for adequate credit monitoring and dark web scanning services for Plaintiff and the Class;

E. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

F. For prejudgment interest on all amounts awarded;

G. For an order of restitution and all other forms of equitable monetary relief requiring the disgorgement of the revenues wrongfully retained as a result of the Defendant's conduct;

H. For injunctive relief as pleaded or as the Court may deem proper; and

I. For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit, and any other expense, including expert witness fees; and

J. Such other relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint and of all issues in this action so triable as of right.

Dated: November 19, 2025

Respectfully submitted,

By: */s/ Carly M. Roman*

Carly M. Roman (SBN: 349895)
croman@straussborrelli.com
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N. Michigan Ave., Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109

Paul J. Doolittle, Esq.*
paul.doolittle@poulinwilley.com
cmad@poulinwilley.com
**POULIN | WILLEY | ANASTOPOULO**
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536

**Pro Hac Vice forthcoming*

*Attorney for Plaintiff and Proposed Class*